## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| **MARIA OFELIA HINOJOSA; FRANCISCO HINOJOSA; MARIA DOLORES RODRIGUEZ, individually and as next friend of F.R.** [1] **and J.A.R.; DALILA RODRIGUEZ; YOLANDA SALAZAR; ENRIQUE SALAZAR ERNESTO BETANCOURT; BLANCA VALENCIA, individually and as next friend of Y.V.; SERGIO VALENCIA; and MARIA JOSE VALENCIA** | **Case No. 2018-cv-2161-CSB-EIL** |
| **Plaintiffs** | |
| **v.** | |
| | **JURY TRIAL DEMANDED** |
| **GOLDEN MEADOWS, LLC; J & S AGRICULTURE CREW, LLC; CENTRAL ILLINOIS PRODUCTION, LLC; SONIA MUÑOZ, individually; and JUAN MUÑOZ, individually;** | |
| **Defendants.** | |

## <u>FIRST AMENDED COMPLAINT</u>

Maria Ofelia Hinojosa, Francisco Hinojosa, Maria Dolores Rodriguez, F.R., J.A.R.,

Dalila Rodriguez, Gloria Angelica Rodriguez, David Rodriguez, Yolanda Salazar, Enrique

Salazar, Ernesto Betancourt, Blanca Valencia, Y.V., Sergio Valencia, and Maria Jose Valencia

collectively, "Plaintiffs"), file their complaint against Golden Meadows, LLC ("Golden

---

[1] In accordance with Fed. R. Civ. P. 5.2, the Plaintiffs who are minors are identified by their initials.

Meadows"), Central Illinois Production, LLC ("CIP"), J & S Agriculture Crew LLC ("J & S"), Sonia Muñoz, and Juan Muñoz  (collectively, "Defendants") and state as follows:

## I. PRELIMINARY STATEMENT

1.      Plaintiffs, who are migrant farm workers, and their family members, bring this action for damages and declaratory relief against the workers' former employers and farm labor contractors for, among other things, failing to pay the workers what they were owed and requiring them to live in overcrowded, unsanitary, and otherwise substandard conditions. Defendants violated Plaintiffs' rights under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §§ 105/1 *et seq.*; the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS §§ 115/1 *et seq.*; the Illinois Field Sanitation Act ("IFSA"), §§ 210 ILCS 105/1 *et. seq.*; the Illinois Migrant Labor Camp Law ("IMLCL"), 210 ILCS §§ 110/1 *et seq.*, and state contract law. In particular, Defendants 1) failed to comply with the disclosure, recordkeeping, housing, wage statement, wage payment and working arrangement provisions of AWPA; 2) failed to pay Plaintiffs at least the federally-mandated or Illinois-mandated minimum wage for all hours worked in violation of the FLSA and the IMWL, respectively; 3) failed to pay Plaintiffs for all earned wages at the rate agreed to by the parties in violation of the IWPCA; 4) failed to comply with the drinking water and toilet facility provisions of IFSA; 5) failed to comply with the camp site and sanitary facility provisions of IMLCL; and 6) breached their employment contracts with Plaintiffs.

2.      Plaintiffs seek an award of money damages and declaratory and injunctive relief, statutory and/or actual damages, attorneys' fees, and pre- and post-judgment interest to make them whole for the damages they suffered due to Defendants' violations of the law. Plaintiffs

also seek declaratory and injunctive relief to ensure that others are not subject to similar practices in the future.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. §§ 1854(a) (covering claims arising under AWPA), and 29 U.S.C. § 216(b) (covering claims arising under FLSA).

4.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims arising under state law because these claims are so related to the federal claims that they form part of the same case or controversy.

5.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202.

6.     This Court is empowered to issue injunctive relief pursuant to 29 U.S.C. § 1854(c)(1).

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1854(a), as a substantial number of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district and as Defendants are incorporated under the laws of Illinois and transacted business within this jurisdiction. Plaintiffs bring this Complaint in the Urbana Division, because the events giving rise to their claims occurred in Vermillion County. *See* CDIL-LR 40.1(D), (F).

## III.     PARTIES

**A.          <u>Plaintiffs</u>**

8.     During the relevant period, Plaintiffs, Maria Ofelia Hinojosa, Francisco Hinojosa, Maria Dolores Rodriguez, Dalila Rodriguez, J.A.R., Gloria Angelica Rodriguez, David

Rodriguez, Blanca Valencia, Maria Jose Valencia, Sergio Valencia, Ernesto Betancourt, and Enrique Salazar (hereinafter "Agricultural Worker Plaintiffs"):

      a.      worked in agricultural employment;

      b.      were required to be absent overnight from their permanent places of residence to perform work for Defendants;

      c.      had permanent places of residence outside of Illinois, the state where they worked for Defendants;

      d.      were "migrant agricultural workers" within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A);

      e.      were "employed" by Defendants within the meaning of the AWPA, 29 U.S.C. § 1802(5);

      f.      were "migrant workers" within the meaning of the IMLCL, 210 ILCS 110/2;

      g.      were "agricultural workers" within the meaning of the IFSA, 210 ILCS 105/2(b);

      h.      handled seed corn that moved in interstate commerce; and

      i.      were "employees" of Defendants as that term is defined by the FLSA, 29 U.S.C. § 203(e)(1), the IMWL, 820 ILCS 105/3(d) and the IWPCA, 820 ILCS 115/2.

9.      During the relevant period, Plaintiff Yolanda Salazar:

      a.      was a non-agricultural worker who was subjected to substandard housing conditions while living with her agricultural worker family member in housing provided by Defendants. 29 U.S.C. § 1823(a); Hernandez v. Ruiz,

b.      812 F. Supp. 734, 737 (S.D. Tex. 1993);

c.      worked providing housekeeping services in housing for Defendants;

d.      was required to be absent overnight from her permanent place of residence to perform work for Defendants;

e.      had a permanent place of residence outside of Illinois, the state where she worked for Defendants; and

f.      was an "employee" of Defendants as that term is defined by the FLSA, 29 U.S.C. § 203(e)(1), the IMWL, 820 ILCS 105/3(d), and the IWPCA, 820 ILCS 115/2.

10.     During the relevant period, F.R. and Y.V. (hereinafter "Non-Agricultural Worker Plaintiffs"), were family members of agricultural workers who were subjected to substandard housing conditions while living with that family member in housing provided by Defendants. 29 U.S.C. § 1823(a); Hernandez v. Ruiz, 812 F. Supp. 734, 737 (S.D. Tex. 1993). The Non-Agricultural Worker Plaintiffs had the following familial relationships with Agricultural Worker Plaintiffs:

a.  F.R. is the child of Maria Dolores Rodriguez;

b.  Y.V. is the child of Blanca Valencia.

**B.**    **Defendants**

11.     Within the relevant time period, Defendants Golden Meadows and CIP have done business within the judicial district.

12.     Within the relevant time period, Defendants Golden Meadows and CIP have functioned as a joint enterprise. For example:

a.      Defendants share a principal office, 3274 E. 800 N. Road, Fairmont, IL 61841;

b.      Defendant Golden Meadows is a Limited Liability Corporation that is currently manager managed by defendant Central Illinois Production LLC;

c.      Defendant CIP LLC is the sole manager of Defendant Golden Meadows;

d.      Golden Meadows LLC was created in 2004 with its sole member being Trisler Seeds Farms, Inc.;

e.      Upon information and belief, at the time of the creation of Golden Meadows LLC, Trisler Seeds, Inc.'s sole shareholder and President was Julie Trisler Catlett;

f.      CIP LLC was created in 2006 with its sole member being Trisler Seeds Inc.;

g.      In 2006, Trisler Seeds, Inc. and CIP, LLC merged into CIP, LLC;

h.      Currently, Defendant CIP is a limited Liability Corporation that is manager managed by Julie Trisler Catlett and T.J. Hale;

i.      Julie Trisler Catlett is the President of CIP, LLC;

j.      Upon information and belief, Defendants Golden Meadows and CIP operate under a common business purpose to produce hybrid seed corn;

k.      Defendant Golden Meadows has one employee: Mark Puzey;

l.      Defendants CIP has two employees: Mark Puzey and Julie Trisler Catlett;

m.      Defendants Golden Meadows and CIP share a general manager, Mark Puzey;

n.      Defendant CIP contracts with Defendant Golden Meadows to provide rogueing and detasseling services to fields managed or owned by CIP, LLC;

o.      Since 2012, Mark Puzey is the only person with the legal authority to enter into any contracts on behalf of CIP and Golden Meadows;

p.      On information and belief, Mark Puzey is the sole person that determined the labor needs and entered into farm labor contracts on behalf of Golden Meadows; and

q.       Mark Puzey is the sole person that inspected fields during the growing season on behalf of CIP, LLC.

13.     During the relevant period of time, Defendant Golden Meadows:

a.      has been a corporation organized under the laws of the State of Illinois;

b.      has conducted business in Illinois and within this judicial district;

c.      has engaged in the selection, development, growing, and conditioning of hybrid seed corn;

d.      was an "agricultural employer" within the meaning of the AWPA, 29 U.S.C. § 1802(2);

e.      has been an "enterprise" as defined by in Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of § 3(s)(1)(A) of the FLSA;

f.      has had two or more employees that have handled seed corn which has moved in interstate commerce;

g.      has, at all relevant times, had annual gross volume sales made or business done in excess of $500,000;

h.      has been an "employer" as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq.*; and

i.      has jointly been an "employer" as that term is defined by AWPA, 29 U.S.C. § 1802(2); the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq.*

14.     During the relevant period of time, Defendant CIP:

a.      has been a corporation organized under the laws of the State of Illinois;

b.      has conducted business in Illinois and within this judicial district;

c.      has engaged in the selection, development, growing, and conditioning of hybrid seed corn;

d.      is the sole manager of Golden Meadows;

e.      was an "agricultural employer" within the meaning of the AWPA, 29 U.S.C. § 1802(2);

f.      has been an "enterprise" as defined by in § 3(r)(1) of the FSLA, 29 U.S.C. § 203(r)(1), and is an "enterprise engaged in commerce, or in the production of goods for commerce," within the meaning of § 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A);

g.      has had two or more employees that have handled seed corn which has moved in interstate commerce;

h.      has, at all relevant times, had annual gross volume sales made or business done in excess of $500,000;

i.      has been an "employer" as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq.*; and

j.      has jointly been an "employer" as that term is defined by AWPA, 29 U.S.C. § 1802(2), the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq.*

15.     During the relevant period of time, Defendant J & S:

a.      has been a corporation organized under the laws of the State of Illinois;

b.      has conducted business in Illinois and within this judicial district;

c.      has been registered with the United States Department of Labor as a "farm labor contractor" within the meaning of the AWPA, 29 U.S.C. § 1802(7), and acted as a farm labor contractor within the meaning of the AWPA;

d.      has engaged in farm labor contracting activity within the meaning of the AWPA, 29 U.S.C. § 1802(6);

e.      has been an "enterprise" as defined in § 3(r)(1) of the FSLA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of § 3(s)(1)(A) of the FLSA, 29 U.S.C. § 203(s)(1)(A);

f.      has had two or more employees that have handled seed corn which has moved in interstate commerce;

g.      has, at all relevant times, had annual gross volume sales made or business done in excess of $500,000;

h.      has been an "employer" as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq*.; and

i.      has jointly been an "employer" as that term is defined by AWPA, 29 U.S.C. § 1802(2), the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq*.

16.     At all relevant times, Defendant Sonia Muñoz:

a.      has been a natural person residing in Vermillion County, Illinois;

b.      has conducted business in Illinois and within this judicial district;

c.      is one of two managers of Defendant J & S;

d.      was registered with the United States Department of Labor as a "farm labor contractor" within the meaning of the AWPA, 29 U.S.C. § 1802(7), and acted as a farm labor contractor within the meaning of the AWPA;

e.      has engaged in farm labor contracting activity within the meaning of the AWPA, 29 U.S.C. § 1802(6);

f.      has been an "employer" as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq*.; and

g.      has jointly been an "employer" as that term is defined by AWPA, 29 U.S.C. § 1802(2), the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq*.

17.     At all relevant times, Defendant Juan Muñoz:

    a.     has been a natural person residing in Vermillion County, Illinois;

    b.     has conducted business in Illinois and within this judicial district;

    c.     is one of two managers of J & S;

    d.     was registered with the United States Department of Labor as a "farm labor contractor" within the meaning of the AWPA, 29 U.S.C. § 1802(7), and acted as a farm labor contractor within the meaning of the AWPA;

    e.     has engaged in farm labor contracting activity within the meaning of the AWPA, 29 U.S.C. § 1802(6);

    f.     has been an "employer" as that term is defined by the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq*.; and

    g.     has jointly been an "employer" as that term is defined by AWPA, 29 U.S.C. § 1802(2), the FLSA, 29 U.S.C. § 203(d), the IMWL, 820 ILCS 105/3(c) and the IWPCA, 820 ILCS 115/1 *et seq*.

## IV.     STATEMENT OF FACTS

### Defendants' Business Model

18.     Golden Meadows engages in the selection, development, growing and conditioning of hybrid seed corn. CIP is the sole manager of Golden Meadows. CIP and Golden Meadows share a principal office, 3274 E. 800 N. Rd. Fairmont, IL 61841.

19.     Detasseling is a necessary and important step in the production of hybrid seed corn.

20.     Detasseling must occur at a specific time during the growing season.

21.     Defendants recruited and employed the Agricultural Worker Plaintiffs to perform detasseling work for them.

22.     Golden Meadows and CIP authorized and utilized the services of Defendant J & S and Defendants Sonia Muñoz and Juan Muñoz (collectively, "J&S Defendants") as farm labor contractors to recruit and hire workers for agricultural employment at Golden Meadows and CIP's agricultural operation in Danville, Illinois, as well as to transport, supervise, instruct and house those workers.

23.     At all times relevant J&S Defendants acted as agents for Golden Meadows and CIP and acted within the scope of their agency.

24.     J & S is in the business of recruiting and hiring agricultural workers to perform work at farms. Sonia Muñoz and Juan Muñoz are registered managers of J & S.

25.     In conducting the recruitment of the Agricultural Worker Plaintiffs and Ms. Salazar, J&S Defendants had direct contact with them while acting on behalf of and as agents of Golden Meadows and CIP.

26.     Golden Meadows and CIP authorized J&S Defendants to recruit the Plaintiffs and authorized them to take actions needed to accomplish this purpose, including providing them with information concerning their transportation, housing, meals, and pay rates.

27.     In 2015, in the state of Texas, J&S Defendants recruited Plaintiffs Enrique Salazar and Ernesto Betancourt in person to work in Defendants Golden Meadows and CIP's seed corn operations.

28.     Plaintiff Yolanda Salazar was recruited in person in Texas by J&S Defendants and employed to perform housekeeping services in housing offered and owned or controlled by Defendants.

29.     In 2015, while Plaintiffs Maria Ofelia Hinojosa and Francisco Hinojosa were in

30.     Texas, J&S Defendants recruited them by phone to work in Defendants Golden Meadows and CIP's seed corn operations in Illinois.

31.     In 2015, while Plaintiffs Maria Dolores Rodriguez, J.A.R., Dalila Rodriguez,

32.     Gloria Angelica Rodriguez, David Rodriguez, Blanca Valencia, Maria Jose Valencia, and Sergio Valencia were in Michigan, J&S Defendants spoke to them about working in Defendants Golden Meadows and CIP's seed corn operations in Illinois.

33.     Agricultural Worker Plaintiffs worked on land owned, controlled, or under contract to Golden Meadows and CIP.

34.     Plaintiff Yolanda Salazar worked providing housekeeping services in housing which Defendants provided to all Plaintiffs.

35.     Golden Meadows and CIP told J&S Defendants when the corn in the fields had to be detasseled and set minimum expectations for how the work would be completed.

36.     Golden Meadows and CIP had the power to instruct crews through their agent J&S Defendants to re-do work in particular fields.

37.     Golden Meadows and CIP inspected fields detasseled by the crews of workers that J&S Defendants had recruited.

38.     Golden Meadows and CIP controlled the access to fields used for detasseling by crews of workers that J&S Defendants had recruited.

**Working Arrangement Violation**

39.     The Parties established working arrangements based upon the promises made by Defendants to Plaintiffs and Plaintiffs' acceptance and reliance upon such information within the meaning of AWPA.

40.     Defendants' employment offer required all Plaintiffs to be absent from their permanent places of residence in Texas.

41.     Defendants' employment offer included free housing that complied with all federal and state requirements, for all Plaintiffs.

42.     At the time of recruitment, Defendants promised Agricultural Worker Plaintiffs and Plaintiff Yolanda Salazar a minimum of 6 weeks of work at a rate of $8.25 per hour.

43.     Agricultural Worker Plaintiffs and Plaintiff Yolanda Salazar accepted the offer of employment with Defendants.

44.     Agricultural Worker Plaintiffs and Plaintiff Yolanda Salazar were at all times ready to comply with the terms and conditions of the working arrangements and employment contracts and did comply.

45.     As a result of the Defendants' offer of work and Agricultural Worker Plaintiffs' and Plaintiff Yolanda Salazar's acceptance, Plaintiffs travelled to Danville, Illinois, incurring travel expenses.

46.     The employment contract between Defendants and the Agricultural Worker Plaintiffs included, among other things, the following:

    a.      work in the Danville, Illinois area detasseling hybrid seed corn that would start on or about July 1, 2015 and last roughly 6 weeks;

    b.      $8.25 per hour of work; and

    c.      free housing.

47.     The employment contract between Defendants and Plaintiff Yolanda Salazar included, among other things, the following:

    a.      work in Danville, Illinois area providing housekeeping service in the migrant housing operated by Defendants that would start on or about July 1, 2015 and last roughly 6 weeks;

    b.      $8.25 per hour of work; and

14

      c.      free housing.

48.      Defendants failed to meet the terms of these working arrangements by, among other things, doing the following:

      a.      not employing Agricultural Worker Plaintiffs and Plaintiff Yolanda Salazar for the agreed-upon 6 weeks, as described more fully below;

      b.      not paying Agricultural Worker Plaintiffs and Plaintiff Yolanda Salazar $8.25 for all hours worked, as described more fully below; and

      c.      providing substandard housing, in violation of AWPA, as described more fully below.

## AWPA Disclosure Violations

49.      Defendants failed to provide written disclosures of the terms and conditions of employment to the Agricultural Worker Plaintiffs in each worker's native language, or failed to provide the written disclosures at all, in violation of AWPA.

50.      Defendants failed to provide the Agricultural Worker Plaintiffs with a copy of the written disclosures to keep, in violation of AWPA.

## Wage Violations

51.      As described above, Defendants promised to pay all Plaintiffs a rate of $8.25 per hour.

52.      Pay stubs, when provided, did not accurately reflect all hours actually worked by all Plaintiffs.

53.      Defendants failed to make, keep, and/or preserve adequate pay and time records.

54.      Defendants had a practice of not paying Plaintiffs for all time worked.

55.      Specifically, Defendants consistently failed to pay all Plaintiffs for approximately 20 hours of work per week.

56.     Additionally, Defendants failed to pay Plaintiff Yolanda Salazar for seven (7) full days of work performed.

57.     Defendants' failure to pay all Plaintiffs for all hours worked resulted in a failure to pay Plaintiffs a least the federally mandated and Illinois mandated minimum wage for all time worked during individual work weeks.

58.     Defendants' failure to pay Plaintiffs for all hours worked resulted in Defendants' failure to pay Plaintiffs for all hours worked at the rate agreed to by the parties in violation of the Migrant and Seasonal Agricultural Worker Protection Act and the Illinois Wage Payment and Collection Act.

**On the Field Working Conditions**

59.     During the course of Plaintiffs' employment, Defendants failed to provide all Agricultural Worker Plaintiffs with access to potable drinking water on the field which state law requires Defendants to provide.

60.     Defendants provided the Agricultural Worker Plaintiffs with dirty drinking water, containing particles of unknown substances.

61.     Defendants gave the Agricultural Worker Plaintiffs drinking water that did not meet public health and sanitation standards and practices.

62.     Defendants failed to give the Agricultural Worker Plaintiffs at least one gallon of water per day, as required by law.

63.     On multiple days, J&S Defendants denied the Agricultural Worker Plaintiffs access to drinking water while working.

64.     On days when they were permitted to drink water while working, J&S Defendants denied Agricultural Worker Plaintiffs a reasonable amount of time to drink the water.

65.     When Defendants provided water, they regularly failed to provide enough cups for each of the Agricultural Worker Plaintiffs, causing them to have to share cups.

66.     Defendants provided inadequate field toilets. Defendants provided one truck that had only two toilets that all Agricultural Worker Plaintiffs had to share among themselves and all other workers.

67.     These inadequate field toilets were dirty and unsanitary.

68.     Defendants failed to provide toilet paper in the field toilets.

69.     Defendants kept the field toilet truck over one-quarter-mile away from Agricultural Worker Plaintiffs' work sites in the field.

70.     Defendant Sonia Muñoz would regularly yell at workers, including the Agricultural Worker Plaintiffs, for taking too long when they went to the bathroom.

71.     As a result of the inaccessibility of the toilets and Defendant Sonia Muñoz ordering them to limit their time in the toilets, Agricultural Worker Plaintiffs were forced to relieve themselves in the fields on multiple occasions.

72.     The Agricultural Worker Plaintiffs suffered mental anguish and humiliation and other emotional harm because of the poor work and field sanitation conditions.

### Housing Conditions

73.     During the course of the Agricultural Worker Plaintiffs' and Plaintiff Yolanda Salazar's employment, all Plaintiffs were housed in housing owned or controlled by Defendants.

74.     Upon information and belief, J&S Defendants did not possess the requisite certification authorizing them to house migrant farmworkers.

75.     Golden Meadows and CIP did not take reasonable steps to determine whether J&S Defendants possessed the requisite certification authorizing them to house migrant farmworkers.

76.     Upon information and belief J&S Defendants owned, leased or maintained a legal interest in the two properties used to house the Plaintiffs.

77.     Plaintiff Yolanda Salazar lived in the migrant worker housing provided by Defendants.

78.     Plaintiff Y.V. is the child of Plaintiff Blanca Valencia and at all times relevant to this action, lived with Plaintiff Blanca Valencia in the migrant worker housing provided by Defendants but was not employed by Defendants.

79.     Plaintiff F.R. is the child of Plaintiff Maria Dolores Rodriguez and at all times relevant to this action, lived with Plaintiff Maria Dolores Rodriguez in the migrant worker housing provided by Defendants but was not employed by Defendants.

80.     J&S Defendants arranged for and assigned Plaintiffs, Maria Ofelia Hinojosa, Francisco Hinojosa, Yolanda Salazar, Ernesto Betancourt, and Enrique Salazar, to be housed at 201 East Conron Avenue, Danville, Illinois ("Conron Avenue Housing").

81.     J&S Defendants arranged for and assigned Plaintiffs, Maria Dolores Rodriguez, Gloria Angelica Rodriguez, Dalila Rodriguez, F.R., J. A. R., David Rodriguez, Blanca Valencia, Maria Jose Valencia, Sergio Valencia, and Y.V., to be housed at 210 Tennessee Avenue, Danville, Illinois ("Tennessee Avenue Housing").

82.     Defendants failed to provide all Plaintiffs with beds or cots at either the Conron Avenue Housing or the Tennessee Avenue Housing.  As a result Plaintiffs were required initially to either sleep on the floor or purchase their own bed or cot.

83.     About thirty-five (35) individuals were housed at the Conron Avenue Housing, including single men and families.

84.     The Conron Avenue Housing had only two (2) bathrooms.

85.     The two (2) bathrooms in the Conron Avenue Housing were shared by all thirty-five (35) individuals.

86.     The toilets in the Conron Avenue Housing did not flush properly.

87.     Neither bathroom in the Conron Avenue Housing was designated in English or Spanish as being for men or women.

88.     Standing water was permitted to accumulate outside of the Conron Avenue Housing.

89.     The Conron Avenue Housing suffered significant flooding and water damage due to heavy rainfall on or about July 20, 2015.

90.     J&S Defendants failed and refused to repair or address the water damage resulting from the heavy rainfall on or about July 20, 2015.

91.     Due to the unrepaired and unaddressed flooding and water damage at the Conron Avenue Housing, mold spread throughout the basement.

92.     Due to the unrepaired and unaddressed flooding and water damage at the Conron Avenue Housing, Plaintiff, Enrique Salazar suffered damage to his personal belongings.

93.     Defendants were aware or should have been aware of the significant water damage, but permitted the Plaintiffs housed at the Conron Avenue Housing to continue to occupy the house.

94.     A total of ten (10) individuals, including both men and women, were housed in the Tennessee Avenue Housing.

95.     The Tennessee Avenue Housing had only two (2) rooms.

96.     The Tennessee Avenue Housing had only one (1) bathroom.

97.     There was no air conditioning or fans provided in the Tennessee Avenue Housing.

98.     The windows and doors of the Tennessee Avenue Housing did not have screens and the windows did not open.

99.     The kitchen sink in the Tennessee Avenue Housing was clogged and did not properly drain.

100.    The Tennessee Avenue Housing was infested with cockroaches.

101.    Defendants knew or should have known about the substandard conditions, but permitted the Plaintiffs housed at the Tennessee Avenue Housing to continue to occupy the house.

102.    All Plaintiffs suffered mental anguish and humiliation and other emotional harm because of the poor housing conditions.

103.    Defendants failed to ensure that the housing it provided to Plaintiffs actually complied with the minimum safety and health standards specified under the AWPA and under applicable state and federal law.

104.    All Plaintiffs suffered actual monetary harm as a result of Defendants' conscious and deliberate actions and omissions related to the housing conditions.

**Breach of Contract**

105.    Defendants' working arrangement with Agricultural Worker Plaintiffs and Plaintiff Yolanda Salazar to work for 6 weeks at $8.25 an hour for all hours worked constituted a contract with each of those Plaintiffs.

106.    Defendant Sonia Munoz suspended Plaintiff David Rodriguez from work for four (4) days without pay or lawful justification, in violation of the contract.

107.    Plaintiffs Maria Hinojosa, Francisco Hinojosa, Yolanda Salazar and Ernesto Betancourt were constructively discharged by virtue of Defendant Sonia Muñoz's deliberate actions which created intolerable working conditions.

108.    Defendant Sonia Munoz threatened to withhold pay or work from these Plaintiffs and harassed and demeaned them whenever they complained about the living and working conditions.

109.    Defendants failed to pay Agricultural Worker Plaintiffs and Plaintiff Yolanda Salazar at the agreed upon rate of $8.25 for all hours worked, in breach of their contracts.

110.    Defendants violated the express and implied terms and conditions of employment with these Plaintiffs, as a result, they breached the contract and working arrangements they had with them.

111.    Defendants' actions were willful.

## COUNT I
### Migrant and Seasonal Agricultural Worker Protection Act

112.    Plaintiffs incorporate and re-allege paragraphs 1 through 111 of this Complaint, as though set forth herein.

113.    This Count arises from Defendants' violation of the AWPA as described more fully in paragraphs 39 - 111, supra.

114.    Defendants violated the rights of all Agricultural Worker Plaintiffs under the AWPA by

       a.      failing to disclose in writing the terms and conditions of employment at the time Agricultural Worker Plaintiffs were recruited, in violation of 29 U.S.C. § 1821(a);

       b.      failing to provide required written information and disclosures to the Agricultural Worker Plaintiffs in their native language, Spanish, or failed to provide at all, in violation of 29 U.S.C. § 1821(g);

c.      failing to make, keep, and preserve adequate payroll records, in violation of 29 U.S.C. § 1821(d)(1);

d.      failing to pay workers' wages owed when due, in violation of 29 U.S.C. § 1822(a); and

e.      failing to comply with the terms of the working arrangements without justification, in violation of 29 U.S.C. § 1822(c).

115.    Defendants also violated the rights of all the Plaintiffs under the AWPA by

a.      failing to ensure sanitary and safe working conditions in the field, in violation of 29 U.S. Code § 1822(c);

b.      failing to ensure that the housing Defendants provided to Plaintiffs complied with applicable substantive federal and state health and safety standards, in violation of 29 U.S.C. § 1823(a); and

c.      failing to post certification of compliance with Federal and State health and safety standards, in violation of 29 U.S.C. § 1823(b)(1).

116.    J&S Defendants further violated the rights of all the Plaintiffs under the AWPA by failing to have valid authorization for the migrant housing provided to Plaintiffs, in violation of 29 U.S.C. § 1812(3).

117.    Golden Meadows and CIP further violated the rights of all Plaintiffs under the AWPA by failing to take reasonable steps to determine that the J&S Defendants possessed valid registration certificates, in violation of 29 U.S.C. § 1842.

118.    The violations of the AWPA were the natural consequences of the conscious and deliberate actions of Defendants and, thus, were intentional within the meaning of the AWPA, 20 U.S.C. § 1854(c)(1).

119.    Prior to instituting this action and in consideration of 29 U.S.C. § 1854(c)(2), Plaintiffs, through their attorneys, attempted to resolve their claims against Defendants without resorting to litigation, but these efforts were unsuccessful.

**COUNT II**
**Violation of the Federal Labor Standards Act – Minimum Wages**

120.    Plaintiffs incorporate and re-allege paragraphs 1 through 119 of this Compliant, as though set forth herein.

121.    This count arises from Defendants' violation of the FLSA, for Defendants' failure to pay Plaintiffs the federally-mandated minimum rate of pay for all hours they worked for Defendants as described more fully in paragraphs 51 - 58, *supra*.

122.    Plaintiffs were directed to work by Defendants and in fact did work, but were not compensated at least the federally-mandated minimum wage for all time worked.

123.    Plaintiffs were not exempt from the minimum wage provisions of the FLSA.

124.    Plaintiffs were entitled to be compensated not less than the federally mandated minimum wage for all hours worked for Defendants in individual work weeks.

125.    Defendants did not pay Plaintiffs the federally mandated minimum wage for all hours they worked.

126.    Defendants' failure to pay Plaintiffs as required was willful.

127.    Defendants' failure to pay Plaintiffs the federally mandated minimum wage rate for all hours worked in individual work weeks violated the FLSA.

128.    Plaintiffs are entitled to their unpaid minimum wages, an additional equal amount in liquidated damages, a reasonable attorney's fee, and costs of court.

**COUNT III**
**Violation of the Illinois Minimum Wage Law – Minimum Wages**

129.    Plaintiffs incorporate and re-allege paragraphs 1 through 128 of this Compliant, as though set forth herein.

130.    This Count arises from Defendants violation of the IMWL for Defendants' failure to pay Plaintiffs the Illinois-mandated minimum wages for all hours worked in individual work weeks as described more fully in paragraphs 51 - 58, *supra*.

131.    Defendants suffered and permitted Plaintiffs to work in certain work weeks in the three years prior to Plaintiffs filing this lawsuit.

132.    Plaintiffs were not exempt from the minimum wage provisions of the IMWL.

133.    Plaintiffs were entitled to be paid not less than the Illinois-mandated minimum wage for all hours worked in individual work weeks.

134.    Defendants did not pay Plaintiffs the Illinois-mandated minimum wage for all hours worked in individual work weeks.

135.    Defendants' failure to pay Plaintiffs the Illinois-mandated minimum wage rate for all hours worked in individual work weeks was a violation of the IMWL.

136.    Pursuant to 820 ILCS 105/12(a), Plaintiffs are entitled to recover unpaid wages for three (3) years prior to the filing of this suit plus statutory damages of 2%, reasonable attorney's fees, and costs.

### COUNT IV
### Violation of the Illinois Wage Payment and Collection Act – Unpaid Wages

137.    Plaintiffs incorporate and re-allege paragraphs 1 through 136 of this Compliant, as though set forth herein.

138.     This Count arises from Defendants' violation of the IWPCA, 820 ILCS 115/1 et seq., for their failure to compensate Plaintiffs for wages for all time worked at the rate agreed to by the parties as described more fully in paragraph 51 - 58, *supra*.

139.     During the course of their employment with Defendants, Plaintiffs had an agreement within the meaning of the IWPCA to be compensated for all hours worked at the rate agreed to by the parties.

140.     Defendants did not pay Plaintiffs for all hours worked at the rates agreed to by the parties.

141.     Defendants' failure to pay Plaintiffs for all time worked at the rate agreed to by the parties violated the IWPCA.

142.     Plaintiffs are entitled to be paid for all time at the rate agreed to by the parties.

143.     Pursuant to 820 ILCS 115/14(a), Plaintiffs are entitled to recover unpaid wages for ten (10) years prior to the filing of this suit, statutory damages of 2%, reasonable attorney's fees, and costs.

### COUNT V
### Violation of the Illinois Field Sanitation Act

144.     Agricultural Worker Plaintiffs incorporate and re-allege paragraphs 1 through 143 of this Compliant, as though set forth herein.

145.     This Count arises from Defendants' violation of the IFSA as described more fully in paragraphs 59 - 72, supra. Defendants violated the rights of Agricultural Worker Plaintiffs under the IFSA by

        a.     failing to provide potable drinking water during the work day, in violation of 210 ILCS § 105/7 and 77 Ill. Adm. Code § 910.40(c);

b.      failing to provide at least one gallon per day of water for each worker, in violation of 77 Ill. Adm. Code § 910.40(a);

c.      failing to dispense water in single-use drinking cups and permitting the use of common drinking cups, in violation of 210 ILCS § 105/7 and 77 Ill. Adm. Code § 910.40(e);

d.      failing to provide toilet facilities located within one-quarter-mile walk of each worker's place of work in the field, in violation of 210 ILCS § 105/9 and 77 Ill. Adm. Code § 910.60;

e.      denying use of toilet and drinking facilities, in violation of 210 ILCS § 105/10;

f.      failing to provide clean and sanitary toilet facilities, in violation of 210 ILCS § 105/5 and 77 Ill. Adm. Code § 910.20(f); and

g.      failing to provide toilet paper, in violation of 210 ILCS § 105/5 and 77 Ill. Adm. Code § 910.20(g).

146.   Defendants' violations of the IFSA were willful within the meaning of the Act.

## <u>COUNT VI</u>
## <u>Violation of the Illinois Migrant Labor Camp Law</u>

147.   Agricultural Worker Plaintiffs incorporate and re-allege paragraphs 1 through 146 of this Compliant, as though set forth herein.

148.   This Count arises from Defendants violation of the IMLCL as described more fully in paragraphs 73 - 104, *supra*.

149.   Defendants violated the rights of Agricultural Worker Plaintiffs living in the

150.   Conron Avenue Housing under the IMLCL, 210 ILCS § 110/10, by

a.       failing to provide beds or cots in rooms used for sleeping, in violation of 77 Ill. Adm. Code § 935.40(c)(7);

b.       failing to provide one toilet per fifteen (15) people, in violation of 77 Ill. Adm. Code § 935.65(a)(1); and

c.       failing to provide separate toilet rooms for men and women and clearly designate them as such in English and Spanish, in violation of 77 Ill. Adm. Code § 935.65(a)(4).

151.     Defendants violated the rights of Agricultural Worker Plaintiffs living in the Tennessee Avenue Housing under the IMLCL, 210 ILCS § 110/10, by

a.       failing to provide beds or cots in rooms used for sleeping, in violation of 77 Ill. Adm. Code § 935.40(c)(7);

b.       failing to provide housing with proper ventilation via windows that open or mechanical ventilation in violation of 77 Ill. Adm. Code § 935.40(c)(5);

c.       failing to provide housing free from animal or insect vectors or pests in violation of 77 Ill. Adm. Code § 935.40(c)(9);

d.       failing to provide screens for all exterior openings in violation of 77 Ill. Adm. Code § 935.40(c)(6);

e.       failing to repair malfunctioning plumbing in violation of 77 Ill. Adm. Code 935.50(d); and

f.       failing to provide separate toilet rooms for men and women and clearly designate them as such in English and Spanish, in violation of 77 Ill. Adm. Code 935.65(a)(4).

152.     Defendants' violations of the IMLCL were willful within the meaning of the Law.

## COUNT VII
## Breach of Contract

153.    Plaintiffs reincorporate and re-allege paragraphs 1 through 152 of this Complaint as though fully set forth herein.

154.    This Count sets forth claims by Plaintiffs against Defendants for monetary relief under state contract law.

155.    Defendants entered into employment contracts with Plaintiffs as described more fully in paragraphs 39 - 48, and 108 - 115, *supra*.

156.    Defendants breached the contracts of employment into which they entered with Plaintiffs by failing to comply with the promised terms and conditions of employment as described more fully in paragraphs 39 - 48, *supra*.

157.    As a direct consequence of Defendants' breach of the employment contract,

158.    Plaintiffs suffered substantial injury.

159.    Defendants are therefore liable to Plaintiffs for actual, incidental, and consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that, as the law applies to them, this Court grant them the following relief:

a.    Enter a declaratory judgment that Defendants violated Plaintiffs' rights under the AWPA;

b.    Enter a declaratory judgment that Defendants violated Agricultural Worker Plaintiffs and Plaintiff Yolanda Salazar's rights under the FLSA, the IMWL, and the IWPCA;

c.    Enter a declaratory judgment that Defendants violated the Agricultural

Worker Plaintiffs' rights under the IFSA, and the IMLCL;

d.       Permanently enjoin Defendants from further violations of the AWPA, the FLSA, the IMWL, the IWPCA, the IFSA and the IMLCL;

e.       Award Agricultural Worker Plaintiffs and Plaintiff Salazar their unpaid minimum wages and an equal amount as liquidated damages for Defendants' violation of the FLSA;

f.       Award Plaintiffs their actual damages, or, alternatively, statutory damages of $500 per person per violation, that applies to them, for Defendants' violations of the AWPA;

g.       Award Agricultural Worker Plaintiffs and Plaintiff Salazar their unpaid minimum wages and statutory damages for Defendants' violation of the IMWL;

h.       Award Agricultural Worker Plaintiffs and Plaintiff Salazar their unpaid wages and statutory damages for Defendants' violation of the IWPCA;

i.       Declare that Defendants' breached Agricultural Worker Plaintiffs and Plaintiff Salazar's employment contract with Defendants;

j.       Award Agricultural Worker Plaintiffs and Plaintiff Salazar their actual, incidental, and consequential damages resulting from Defendants' breach of contract;

k.       Award Plaintiffs prejudgment and post-judgment interest as allowed by law;

l.       Awarding Agricultural Worker Plaintiffs and Plaintiff Salazar their costs and reasonable attorney's fees; and

   m.  Award Plaintiffs such other relief as this Court deems just and proper.


Dated: 1/30/2019       Respectfully submitted,


         s/Yolanda Carrillo        
         Yolanda Carrillo
         Illinois Bar No.: 6305590
         Illinois Migrant Legal Assistance Project
         Legal Assistance Foundation of Chicago
         120 South LaSalle Street, Suite 900
         Chicago, Illinois 60603
         Phone: (312) 229-6363
         ycarillo@lafchicago.org

         s/Lakshmi Ramakrishnan      
         Lakshmi Ramakrishnan
         Texas Bar No. 24037324
         Texas RioGrande Legal Aid, Inc.
         301 S. Texas Ave.
         Mercedes, TX 78570
         Phone: (956)447-4850
         Fax: (956)825-7035
         lramakrishnan@trla.org

         ATTORNEYS FOR PLAINTIFFS